The Honourable, the United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honourable Court may give their attendance and they shall be heard. God save the United States of America and this Honourable Court. Court is in session. Today's cases will be called as announced and the times will be allotted to Council. The first case today is Matthew Gutwill v. City of Framingham et al. Appeal No. 201174. Attorney Grundy, please introduce yourself for the record and proceed with your argument. Good morning, Your Honours. Again, Richard Grundy on behalf of the plaintiff, Matthew Gutwill. Your Honour, Judge Lynch, if I might, I'd like to reserve one minute and 30 seconds for rebuttal if allowed by the Court. Certainly. Thank you very much. Ladies and gentlemen, Detective Gutwill, a police officer with the Framingham Police Department for approximately 15 years. After his first two years was assigned to the DEA, he was the first Framingham police officer to take one of these full-time positions with the DEA and he remained in that position for eight years, serving with distinction up until January of 2016. As a result of an arrest he became involved in in April of 2015, which involved the use of a C.I. by a fellow Framingham police officer, Gedino, who then failed to report the use of the C.I. in his report and went on to testify in court, untruthfully, to keep the use of the C.I. in his report. Detective Gutwill learned of this when he went to testify and was told that the prosecutors were considering no processing the case because they just learned of the C.I. in any testimony that went forth would cause great concern with respect to credibility of someone within the police department. Detective Gutwill did the right thing. He got the transcript that same day. He read through it. He saw numerous instances of Gedino not being truthful with respect to the C.I., including the fact that he had met Officer Gedino with the C.I. both before and after the arrest, providing the C.I. with money, that the information from the C.I. led them to know where the car, which was stopped leading to the arrest, would be. Detective Gutwill, that same day, took this transcript to his superior, specifically Assistant to the Chief Attorney Semino and the Deputy Chief Slattery, and brought it to their attention and told them that he was looking to take some action with respect to this, and he was quite insistent on that. They had him fill out a report. He did that. An investigation was conducted, a thorough, efficient investigation by a Sergeant Montori who worked in Internal Affairs for the Framingham Police Department. Sergeant Montori interviewed nine witnesses, that to include every other police officer that was involved in that operation, that to include the district attorneys who handled the case, who unanimously stated that Gedino had not been truthful in his testimony. When Chief Ferguson received that information, he told his command staff, which includes Semino, Slattery, a Deputy Chief Brandolini, and a Deputy Chief Trask, that he would not accept the report. He assigned Pereira to do a follow-up report, specifically asking him to speak to the two ADAs who handled the case. Detective Pereira did not speak to them. He did not conduct any further investigation. He was a late comer to the investigation and only was present for two of the interviews that were conducted. He simply wrote a report without addressing the numerous interviews that indicated Officer Gedino was untruthful, that came to the conclusion sought by Chief Ferguson that the officer was not untruthful. Specifically, and very importantly, excuse me. You have only five minutes left. You might want to get to your argument. Yes, Your Honor. That report, Your Honor, was to be based on interviews of ADA Hagerty and Brunelli and also a supervisor, Pelgro, who Chief Ferguson indicated that he had, in fact, spoken to who said there was more to the story. Both of those ADAs were deposed and said they never had any conversation with Chief Ferguson. That, ladies and gentlemen, is part of the causation because it shows from the very onset that Chief Ferguson had a very strong interest and put himself out on a limb to have this not go any further. At the time, Framingham Police Department and Chief Ferguson in particular were under the gun for other items that had occurred, including the evidence officer having been arrested for stealing from the evidence room. The town manager had indicated that he was going to do a top-to-bottom review. He found there was weak leadership, and following that, Detective Gutwell continued to seek redress for this and ultimately went outside of the walls of Framingham Police Department, including reporting this to the FBI. The Framingham Police Department hired an attorney more to do a review. Attorney Moore's review and recommendation was flawed to the extent that she showed tremendous bias and involved Chief Ferguson in each step of the investigation. Her retention letter never indicated that she, in fact, had been retained to investigate Gutwell for this phone call that occurred, only that he had been retained to investigate a retaliation claim by Gutwell. Ms. Attorney Moore indicated that she made her decision based on several documents, including notes allegedly taken by Chief Ferguson during the offending phone call and her subsequent report. Mr. Grundy, I'm sorry to interrupt again, but do you contend that the district court made an error that we should reverse? Yes, I do, Your Honor. The error was in not looking at the full case of the facts that led to the causation. The investigation, particularly by Attorney Moore, was flawed to the extent, which is relied on totally by the defendant in order to prevail. Attorney Moore was meeting with Chief Ferguson and actually had a meeting, which in her testimony, at a further hearing, she indicated that she was very aloof with the chief, that she only said hello to him, the investigation's going fine. Discovery that only came as a result of the lawsuit showed that they had hour-long meetings. One of those meetings on February 23rd led to an investigation of Gutwell himself for the untruthfulness charge, not having anything to do with the retaliation. In addition to that, Moore took direction to start other investigations from Chief Ferguson. All of those that were targeted to get a charge of untruthfulness against Detective Gutwell. It was put into place in a manner to quell Detective Gutwell's ongoing attempts to bring this cover-up and the perjury to the light of someone who would take actions on it. By either discrediting Gutwell through a charge of untruthfulness or intimidating him to back down, they pursued this investigation. The information in what Attorney Moore said was a he-said-she-said, that she led to settle that, included what she said in an order of importance to her, documents. The only documents that she examined that had anything to do with it were notes that were alleged to have been taken by Chief Ferguson the night of the offending phone call. Those notes were not provided to Attorney Moore until she had done all her interviews on this. In April, she sends an email to Chief Ferguson asking him if he had found those notes. Months later, in August, just days before she issues her report, she gets a hold of Chief Ferguson and asks him, has the offending statement turned the place upside down in your notes? She had concluded her investigation without having seen those notes. The report that Chief Ferguson wrote, he indicates, I don't know when I wrote it, when I completed it. I don't know if I wrote it on behest of Attorney Moore or if I wrote it on behest of the HR, Dolores Hamilton, and he doesn't know when he provided those notes to Attorney Moore. Time has expired. Yeah, Mr. Grundy, you've reserved some time. We'll hear you later. Thank you. At this time, Mr. Grundy, please mute your device. Audio and video. And Attorney Clardy, please introduce yourself on the record and proceed. Thank you. Good morning. May it please the court. My name is John Clardy. I represent the city of Framingham and Chief Kenneth Ferguson. And we're going to request this court affirm the summary judgment decision in favor of the defendants. It was well founded and nothing I've heard from my brother, Attorney Grundy, has indicated any error of law here. I think a fundamental problem is Attorney Grundy is focusing on this report of the Godino testimony in a criminal case. And problematic is that that is not the speech at issue in this lawsuit. The speech at issue in this lawsuit is the January 2016 meeting that he had with the FBI, where he reported seven different incidents. One was the outcome of the Godino investigation, but there were six others included stale and petty items like people arriving late for work or a police lieutenant studying while on the job. Those were what was reported to the FBI. That is the speech at issue, not this internal report to the Godino case. And significantly, the Godino report cannot be an actionable First Amendment claim because it's an internal report. Mr. Clardy, I had read your briefs and I had understood that while you were making this argument that there was no protected speech and no jury could possibly conclude that, that you actually had a better argument, if you will, that under Mount Healthy, given the final hearing officer's report, which concluded that the plaintiff had been untruthful in violation of Framingham's rules, that the department had adequate cause to terminate him and would have terminated him anyway. Could you please address that topic? Yes, Your Honor. That, in fact, was one of the lead arguments we had below, and we do assert that the Mount Healthy defense applies here, that we would have made the same. Isn't that what the district court ultimately concluded? And isn't that what you need to defend, the district court's Mount Healthy conclusion? Well, yes, Judge. They know those standards, however, so I think the court can look at the entirety of the summary judgment record. Could you get to the Mount Healthy issue, please? Yes, Your Honor. Under Mount Healthy, we would have made the same decision anyway, and it's evident from the record. Here we have a hearing officer who issued a 10-page decision finding that Mr. Gutwell was untruthful, and that finding was made after a hearing where witnesses were taken and evidence was taken, and Mr. Gutwell himself had an opportunity to testify before the independent hearing officer, who was not an employee of the town, who refused to testify. And based on all the evidence the hearing officer found, he concluded that, yes, Mr. Gutwell was untruthful during the internal investigation on two instances, when Mr. Gutwell denied having made two different comments to the chief during that internal investigation, blowing the place up and saying Brando was on a wire. On both of these occasions, the hearing officer found that the statements were made and, therefore, the denials were untruthful. So we have a hearing officer making a recommendation that this untruthfulness could lead to termination of a police officer because truthfulness is an essential job function of the police, and instead what happened was the chief had exercised his discretion to suspend this untruthfulness, and it was well-founded and it would have happened anyway, regardless of the reporting of the stale and petty incidents to the FBI that had predated the phone call with the chief. Mr. Clardy, one of the arguments that I think I teased out of the reply brief was that one of the against the plaintiff, that that happened in late February, the 23rd or the 2nd of March, and that that was precipitated by his persisting and pursuing his complaints to the FBI after February 5. Could you address that argument? Certainly. The facts show that the internal done by attorney Moore, who was an outside independent investigator, was precipitated not by the FBI reporting, but instead by plaintiff's own claims of retaliation. Her investigation was investigating Gutwell's purported retaliation that I'm getting treated differently because of my FBI reporting. I think the claim is made that what you just said is absolutely correct. I think the claim is made is that the chief then expanded the scope of her review to include Gutwell as a target. Yes, your honor, that is accurate. In fact, during the course of her investigation, when Gutwell was denying that he made these statements to the chief on that February 5th phone call, then the chief allowed the investigation to expand to address the truthfulness of those two statements. Give me the dates because I think she wasn't, when was she retained? She wasn't retained until March something, right? She was, the phone calls on February 5th of 2016, and her investigation, I believe, was done, was started shortly thereafter. I don't have the dates right in front of me, but it was the end of February, early March, where she was retained as an outside investigator. Okay, so when, are you saying that she first questioned Gutwell before her examination, her investigation was expanded to include Gutwell as a target? Yes, your honor. She had interviewed Mr. Gutwell on four, at least four separate occasions, sometimes for four to six hours at a time. When was the first one? I don't have that at my fingertips, your honor, but I think that that was one of the first steps she took early in March, was to meet with him. She met with him in March, over multiple days in March and April. The investigation was expanded prior, on March 2nd, wasn't it? No, I believe that's when she had already reported him that he was being untruthful. The only reason that... She must have spoken to him before March 2nd, then. Correct. The untruthfulness was Gutwell's statements to her, to Attorney Moore. He denied to Attorney Moore that he had said, blow the place up or Brando was on a wire during that phone call. So that was a precipitating event. She had to have spoken to him because it was his own denial of the claims that was the untruthfulness. So either way, your honor, we think that the instigation of an internal investigation itself is not an adverse job action under this court's precedent, which was... Yeah, but putting that aside, I thought you were saying that she, in fact, had talked to him and to Gutwell that that had caused her to be concerned about whether he was being truthful to her. She reported those concerns to Framingham, which then led to the, well, guess you better investigate that as well. And that once the independent investigator has that information, that in and of itself is a Mount Healthy situation because at that point, there was an obligation to look into the matter of untruthfulness. Is that basically it? Yes, your honor. That's the sequence. That's how it rolled out, that sequence exactly. And so we had an obligation to investigate the untruthfulness and it was deemed to be found untruthful. And then we went to a hearing officer and the hearing officer agreed it was untruthful. So any reasonable police official when found with an officer who's found untruthful by an outside investigator and an independent hearing officer is going to discipline the officer. So that's Mount Healthy in a nutshell. So we would have disciplined him regardless of his speech, which was different. His speech that's protected wasn't blow the place up or Brando on a wire. His protected speech was this FBI meeting. And so we weren't disciplining him for his speech to the FBI. He was being disciplined for having been untruthful and denying he said blow the place up or Brando was on a wire, which I think even today he denies. And he said at his deposition, he denies they ever said that during that phone call, although he quibbles over the wording of blow the place up. So we think we have a Mount Healthy defense open and shut. There's a there's a causation defense, which even precipitates that because there's no evidence of causation here for the initial discipline in the first place. You have to show it was expired. If you win on Mount Healthy, the causation issue drops out of the case, correct? Yes, Your Honor, that's correct. Okay, thank you very much. Thank you, Your Honor. At this time, Mr. Clowerty, you can mute your device, audio and video. And Mr. Grundy, please unmute your device and reintroduce yourself on the record for us. Good morning again, Justices Richard Grundy on behalf of the plaintiff. If I might, Your Honors, I'd like to touch upon the chronology that was asked about by Justice Kayada because it's crucial to the understanding of where Attorney Moore went off the tracks on this. She was retained on February 16th of 2016. She indicates in her retention letter, she was retained solely for the purpose of the retaliation claim of Gutwell. She has a meeting with Ferguson on February 23rd, at which time Ferguson, and I understand too, again, substantive meetings with Gutwell because it would be inappropriate because he was, quote, end quote, accused of misconduct. She had an hour long meeting where she received materials at the direction of Judge Ferguson, excuse me, Chief Ferguson. Counsel, when did she talk to your client? The first conversation was on March 4th. And Your Honor, that's crucial too, because in her report regarding the untruthfulness, she claims that she was retained on February 16th to investigate Gutwell and the phone call. However, it is in no retention letter. The record shows no retention letter. That retention- Okay, Counsel, thank you. Unless my colleagues have further questions, your time is up. Okay. Thank you. Thank you. Thank you. That concludes this argument. Attorney Grundy and Attorney Clarity, you should disconnect from the hearing at this time.